IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KIRK CARMOUCHE<br>106 Mabeline Drive<br>Gallipolis, Ohio 45631 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT** |
| HOLZER MEDICAL CENTER<br>100 Jackson Pike<br>Gallipolis, Ohio 45631 | )<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| **Serve Also:**<br>Holzer Hospital Foundation<br>100 Jackson Pike<br>Gallipolis, Ohio 45631 | )<br>)<br>)<br>)<br>) | |
| -and- | ) | |
| REBECCA LEWIS<br>c/o Holzer Medical Center<br>100 Jackson Pike<br>Gallipolis, Ohio 45631 | )<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

Plaintiff, Kirk Carmouche, by and through undersigned counsel, states and avers the following for the Complaint against the Defendants:

**PARTIES AND VENUE**

1. Carmouche is a resident of the City of Gallipolis, County of Gallia, State of Ohio.

2. At all times herein, Carmouche was acting in the course and scope of his employment.

3. Holzer Medical Center ("Holzer") is a domestic corporation not for profit with its principal place of business located at 100 Jackson Pike, Gallipolis, Ohio 45631.

4. Holzer is, and at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq*.

5. Rebecca Lewis is a resident of Ohio.

6. At all times herein, Lewis was acting in the course and scope of her employment.

7. Lewis was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at Holzer who acted directly or indirectly in the interest of Holzer.

8. All of the material events alleged in this Complaint occurred in Gallia County, Ohio.

9. Therefore, personal jurisdiction is proper over Defendants pursuant to R.C. §2307.382(A)(1) and (4).

10. Venue is proper pursuant to Civ. R. 3(C)(3) and (6).

11. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

12. Within 300 days of the conduct alleged below, Carmouche filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 472-2023-01374 against Holzer ("Carmouche EEOC Charge").

13. On or about October 18, 2023, the EEOC issued a Notice of Right to Sue letter to Carmouche regarding the Charges of Discrimination brought by Carmouche against Holzer in the Carmouche EEOC Charge.

14. Carmouche received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

15. Carmouche has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

16. Carmouche has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

17. Carmouche is a former employee of Holzer.

18. Carmouche was hired by Holzer in or about October 2018.

19. Carmouche was employed by Holzer in the position of Dietary Manager.

20. Holzer was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C § 2611(4).

21. At all times relevant herein, Carmouche was employed by Holzer for at least 12 months and had at least 1,250 hours of service with Holzer and therefore was an "eligible employee" under FMLA, as that term is defined in 29 U.S.C. § 2611(2)(A).

22. Carmouche suffers from Post-Traumatic Stress Disorder ("Carmouche's Disability").

23. Carmouche's Disability is a mental or psychological disorder, and specifically an intellectual disability.

24. Carmouche's Disability is a disease.

25. Carmouche's Disability relates to an intellectual disability.

26. Carmouche's Disability is a physical impairment.

27. Carmouche's Disability substantially limits one or more major life activities.

28. Carmouche has a record of Carmouche's Disability.

29. As a result of Carmouche's Disability, Carmouche is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

30. Carmouche disclosed Carmouche's Disability to Defendants.

31. In the alternative, Defendants perceived Carmouche as being disabled.

32. In the alternative, the Defendants perceived that Carmouche's Disability constituted a mental impairment.

33. In the alternative, Defendants perceived Carmouche's Disability to substantially impair one or more major life activities, including working.

34. Despite this actual or perceived disabling condition, Carmouche was still able to perform the essential functions of Carmouche's job.

35. As a result of Carmouche's Disability, Carmouche sometimes has difficulty managing and/or responding to stress.

36. As a result of Carmouche's Disability, Carmouche sometimes has difficulty maintaining focus for extended periods of time.

37. In or about mid-2019, Lewis began treating Carmouche less favorably than his similarly situated, non-disabled coworkers ("Discriminatory Treatment").

38. The Discriminatory Treatment involved Lewis closely scrutinizing the quality of Carmouche's work.

39. The Discriminatory Treatment involved Lewis scrutinizing the quality of Carmouche's work more closely than she scrutinized the work of Carmouche's non-disabled coworkers.

40. The Discriminatory Treatment involved Lewis assigning job duties to Carmouche that were outside the scope of Carmouche's job description.

41. The Discriminatory Treatment involved Lewis demanding that Carmouche perform more tasks than his similarly situated, non-disabled coworkers.

42. The Discriminatory Treatment was based on Carmouche's Disability.

43. The Discriminatory Treatment was unwanted by Carmouche.

44. Carmouche opposed the Discriminatory Treatment.

45. The Discriminatory Treatment was severe.

46. A reasonable person would consider the Discriminatory Treatment to be severe.

47. The Discriminatory Treatment was pervasive.

48. A reasonable person would consider the Discriminatory Treatment to be pervasive.

49. Defendants have a Discrimination Policy.

50. The Discriminatory Treatment is a violation of the Discrimination Policy.

51. Alternatively, the Discriminatory Treatment is not a violation of the Discrimination Policy.

52. Defendants have a Harassment Policy.

53. The Discriminatory Treatment violates the Harassment Policy.

54. Alternatively, the Discriminatory Treatment is not a violation of the Harassment Policy.

55. Alternatively, the Discriminatory Treatment is permitted by Defendants.

56. The Discriminatory Treatment constituted harassment.

57. The Discriminatory Treatment created a hostile work environment based on disability.

58. The Discriminatory Treatment caused Carmouche emotional distress.

59. As a result of the Discriminatory Treatment, Carmouche's Disability worsened.

60. As a result of the Discriminatory Treatment, Carmouche began experiencing more severe symptoms of Carmouche's Disability.

61. As a result of the Discriminatory Treatment, Carmouche had more difficulty focusing and completing his work.

62. In or about late-2019, following the Discriminatory Treatment, Carmouche informed Lewis that the Discriminatory Treatment was exacerbating Carmouche's Disability ("First Complaint").

63. As a result of the First Complaint, Defendants were on notice of Carmouche's Disability.

64. As a result of the First Complaint, Defendants were on notice of the Discriminatory Treatment.

65. Holzer has a policy of investigating significant workplace issues or events.

66. The First Complaint reported a significant workplace issue or event.

67. Pursuant to Holzer's policies, the First Complaint should be investigated.

68. Alternatively, pursuant to Holzer's policies, the First Complaint should not be investigated.

69. An investigation should include interviewing the complainant.

70. An investigation should include interviewing the subject of the complaint.

71. An investigation should include interviewing the subject of the reported discrimination.

72. An investigation should include interviewing witnesses to the reported discrimination.

73. An investigation should include getting a written statement from the complainant.

74. An investigation should include getting a written statement from the subject of the complaint.

75. An investigation should include getting a written statement from the subject of the reported discrimination.

76. In response to the First Complaint, Defendants did not interview Carmouche.

77. In response to the First Complaint, Defendants did not interview Lewis.

78. In response to the First Complaint, Defendants did not interview any witnesses.

79. In response to the First Complaint, Defendants did not get a written statement from Carmouche.

80. In response to the First Complaint, Defendants did not get a written statement from Lewis.

81. In response to the First Complaint, Defendants did not get a written statement from any witnesses.

82. In response to the First Complaint, Defendants conducted no investigation whatsoever.

83. By failing to investigate the First Complaint, Defendants ratified Lewis's conduct.

84. By failing to investigate the First Complaint, Defendants allowed Lewis's conduct to continue.

85. Failing to investigate the First Complaint is an adverse action.

86. Failing to investigate the First Complaint is an adverse employment action.

87. Defendants willfully failed to investigate the First Complaint.

88. Defendants intentionally failed to investigate the First Complaint.

89. In response to the First Complaint, Defendants did not correct the Discriminatory Treatment.

90. In response to the First Complaint, Defendants did not tell Carmouche why they declined to correct the Discriminatory Treatment.

91. In response to the First Complaint, Defendants failed to take any remedial action.

92. The Discriminatory Treatment continued from 2019 through 2022.

93. From 2019 to 2022, Carmouche continued to adequately perform the essential functions of his job.

94. From 2019 to 2022, Carmouche continued to perform the essential functions of his job at least equally as well as his non-disabled coworkers.

95. Lewis demanded more productivity from Carmouche than she demanded from his non-disabled coworkers.

96. Lewis assigned tasks to Carmouche that she did not assign to his non-disabled coworkers.

97. In February 2022, Carmouche complained that the PIP was exacerbating Carmouche's Disability.

98. Carmouche complained that the Discriminatory Treatment was exacerbating Carmouche's Disability.

99. Paragraphs 97 and 98 will be referred to collectively as the "Second Complaint."

100. The Second Complaint reported a significant workplace issue or event.

101. Pursuant to Holzer's policies, the Second Complaint should be investigated.

102. Alternatively, pursuant to Holzer's policies, the Second Complaint should not be investigated.

103. In response to the Second Complaint, Defendants did not interview Carmouche.

104. In response to the Second Complaint, Defendants did not interview Lewis.

105. In response to the Second Complaint, Defendants did not interview any witnesses.

106. In response to the Second Complaint, Defendants did not get a written statement from Carmouche.

107. In response to the Second Complaint, Defendants did not get a written statement from Lewis.

108. In response to the Second Complaint, Defendants did not get a written statement from any witnesses.

109. In response to the Second Complaint, Defendants conducted no investigation whatsoever.

110. By failing to investigate the Second Complaint, Defendants ratified Lewis's conduct.

111. By failing to investigate the Second Complaint, Defendants allowed Lewis's conduct to continue.

112. Failing to investigate the Second Complaint is an adverse action.

113. Failing to investigate the Second Complaint is an adverse employment action.

114. Defendants willfully failed to investigate the Second Complaint.

115. Defendants intentionally failed to investigate the Second Complaint.

116. In response to the Second Complaint, Defendants did not correct the Discriminatory Treatment.

117. In response to the Second Complaint, Defendants did not tell Carmouche why they declined to correct the Discriminatory Treatment.

118. In response to the Second Complaint, Defendants failed to take any remedial action.

119. Carmouche requested intermittent FMLA leave to treat Carmouche's Disability ("FMLA Request").

120. Carmouche's Disability is a "Serious Health Condition" as defined by the FMLA.

121. Holzer is a covered employer under the FMLA.

122. At the time of the FMLA Request, Carmouche had worked for Holzer for at least 12 months.

123. At the time of the FMLA Request, Carmouche had at least 1,250 hours of service for Holzer during the preceding 12 months.

124. At the time of the FMLA Request, Carmouche qualified for FMLA leave in connection with Carmouche's Disability.

125. At the time of the FMLA Request, Carmouche was eligible to utilize FMLA leave due to Carmouche's Disability.

126. At the time of the FMLA Request, Carmouche was entitled to utilize FMLA leave due to Carmouche's Disability.

127. Carmouche utilized intermittent FMLA leave until August 12, 2022.

128. On or about August 12, 2022, Defendants terminated Carmouche's employment ("Termination").

129. Defendants' stated basis for termination was that Carmouche's job performance was "inconsistent." ("Stated Basis for Termination").

130. Defendants have a progressive disciplinary policy.

131. Defendants used a progressive disciplinary policy.

132. Defendants used a progressive disciplinary policy for employees who are not disability.

133. Defendants used a progressive disciplinary policy for employees who have not requested and/or utilized FMLA leave.

134. Under the progressive disciplinary policy, Carmouche had not been given a verbal warning related to the Stated Basis for Termination.

135. Under the progressive disciplinary policy, Carmouche had not been given a written warning related to the Stated Basis for Termination.

136. Under the progressive disciplinary policy, Carmouche had not been given a final written warning related to the Stated Basis for Termination.

137. Under the progressive disciplinary policy, Carmouche had not been given a suspension related to the Stated Basis for Termination.

138. Prior to terminating Carmouche's employment, Defendants never issued any written communication criticizing Carmouche for any reason related to the Stated Basis for Termination.

139. The Stated Basis for Termination has no basis in fact.

140. The Stated Basis for Termination did not actually motivate Defendants' decision to terminate Carmouche's employment.

141. The Stated Basis for Termination was insufficient to motivate the termination of Carmouche's employment.

142. The Stated Basis for Termination was pretext to terminate Carmouche's employment.

143. Defendants did not terminate similarly situated employees for a reason like the Stated Basis for Termination.

144. Defendants' termination of Carmouche's employment was retaliation for the First Complaint.

145. Defendants' termination of Carmouche's employment was retaliation for the Second Complaint.

146. Defendants' termination of Carmouche's employment was retaliation for the FMLA Request.

147. Defendants terminated Carmouche's employment because of Carmouche's Disability.

148. By terminating Carmouche's employment, Defendants made it less likely for a reasonable employee to make a report or oppose conduct like the Discriminatory Treatment.

149. The Termination constitutes retaliation.

150. The Termination constitutes disability discrimination.

151. Defendants knowingly skipped progressive disciplinary steps in terminating Carmouche's employment.

152. Defendants knowingly terminated Carmouche's employment.

153. Defendants knowingly took an adverse employment actions against Carmouche.

154. Defendants knowingly took an adverse actions against Carmouche.

155. Defendants intentionally skipped progressive disciplinary steps in terminating Carmouche's employment.

156. Defendants intentionally terminated Carmouche's employment.

157. Defendants intentionally took an adverse employment actions against Carmouche.

158. Defendants intentionally took an adverse actions against Carmouche.

159. Defendants knew that skipping progressive disciplinary steps in terminating Carmouche's employment would cause Carmouche harm, including economic harm.

160. Defendants knew that terminating Carmouche's employment would cause Carmouche harm, including economic harm.

161. Defendants willfully skipped progressive disciplinary steps in terminating Carmouche's employment.

162. Defendants willfully terminated Carmouche's employment.

163. There was a causal connection between Carmouche's Disability and the Termination.

164. There was a causal connection between Carmouche's FMLA Request and the Termination.

165. As a result of Defendants' unlawful acts, Carmouche has suffered, and will continue to suffer, pecuniary harm.

166. As a result of Defendants' unlawful acts, Carmouche has suffered, and will continue to suffer, emotional distress.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

167. Carmouche restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

168. Defendants took adverse employment actions against Carmouche based on Carmouche's Disability.

169. Defendants violated the ADA when they took adverse employment actions against Carmouche based on Carmouche's Disability.

170. Defendants violated the ADA when they engaged in disparate treatment based on Carmouche's Disability.

171. Carmouche suffered damages as a proximate result of Defendants' conduct based on Carmouche's Disability.

172. As a direct and proximate result of Defendants' disability-based conduct, Carmouche has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

173. In discriminating against Carmouche based on disability, Defendants acted with malice or reckless indifference to the rights of Carmouche, thereby entitling Carmouche to an award of punitive damages.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

174. Carmouche restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

175. Defendants took adverse employment actions against Carmouche based on Carmouche's disability.

176. Defendants violated R.C. § 4112.02(A) when they took adverse employment actions against Carmouche based on Carmouche's disability.

177. Defendants violated R.C. § 4112.02(A) when they engaged in disparate treatment based on Carmouche's disability.

178. Carmouche suffered damages as a proximate result of Defendants' conduct based on Carmouche's disability.

179. As a direct and proximate result of Defendants' disability-based conduct, Carmouche has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

180. In discriminating against Carmouche based on disability, Defendants acted with malice or reckless indifference to the rights of Carmouche, thereby entitling Carmouche to an award of punitive damages.

### COUNT III: RETALIATION IN VIOLATION OF THE ADA

181. Carmouche restates each and every prior paragraph of this complaint, as if it were fully restated herein.

182. As a result of Defendant's discriminatory conduct described above, Carmouche complained about the perceived disability discrimination he was experiencing.

183. Subsequent to Carmouche's reporting of disability discrimination to his supervisor and employer, Carmouche continued to experience discrimination and was put on a Performance Improvement Plan.

184. Defendants' actions were retaliatory in nature based on Carmouche's opposition to the unlawful discriminatory conduct.

185. Pursuant to the ADA, it is an unlawful discriminatory practice to retaliate against an employee for opposing disability discrimination.

186. As a direct and proximate result of Defendants' conduct, Carmouche suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT IV: RETALIATION IN VIOLATION OF R.C. § 4112.02(I)

187. Carmouche restates each and every prior paragraph of this complaint, as if it were fully restated herein.

188. As a result of the Defendant's discriminatory conduct described above, Carmouche complained about the perceived disability discrimination Carmouche was experiencing.

189. As a direct and proximate result to Carmouche's reporting of unlawful discrimination and harassment to Defendants, Defendants took adverse employment actions against Carmouche.

190. As a direct and proximate result to Carmouche's reporting of unlawful discrimination and harassment to Defendants, Defendants took adverse actions against Carmouche.

191. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

192. As a direct and proximate result of Defendant's retaliatory conduct against and termination of Carmouche's employment, Carmouche suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

193. In retaliating against Carmouche, Defendants acted with malice or reckless indifference to the rights of Carmouche, thereby entitling Carmouche to an award of punitive damages.

## COUNT V: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

194. Carmouche restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

195. Pursuant to 29 U.S.C. § 2601 *et seq*., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

196. Holzer is a covered employer under FMLA.

197. During his employment, Carmouche qualified for FMLA leave.

198. During his employment, Carmouche attempted to request FMLA leave by asking Defendants if he qualified to take FMLA leave.

199. Defendants failed to properly advise Carmouche of his rights under FMLA.

200. Defendants unlawfully interfered with Carmouche's exercise of his rights under FMLA in violation of Section 105 of FMLA and section 825.220 of FMLA regulations.

201. Defendants violated section 825.300(c)(1) of FMLA and interfered with Carmouche's FMLA rights when Defendants did not honor Carmouche's approved use of FMLA leave.

202. As a direct and proximate result of Defendants' conduct, Carmouche is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT VI: RETALIATION IN VIOLATION OF FMLA

203. Carmouche restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

204. During his employment, Carmouche utilized FMLA leave.

205. After Carmouche utilized his qualified FMLA leave, Defendants retaliated against him.

206. Defendants retaliated against Carmouche by terminating his employment.

207. Defendants willfully retaliated against Carmouche in violation of 29 U.S.C. § 2615(a).

201. As a direct and proximate result of Defendants' wrongful conduct, Carmouche is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT VII: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION
### (Against Lewis)

208. Carmouche restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

209. Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

210. Lewis aided, abetted, incited, coerced, and/or compelled Holzer's discriminatory adverse employment actions against Carmouche.

211. Lewis aided, abetted, incited, coerced, and/or compelled Holzer's discriminatory treatment of Carmouche.

212. Lewis violated R.C. § 4112.02(J) by aiding, abetting and inciting discrimination.

213. Carmouche suffered emotional distress as a result of Lewis conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

214. As a direct and proximate result of Lewis's conduct, Carmouche has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

215. In aiding, abetting and inciting discrimination against Carmouche based on disability, Defendants acted with malice or reckless indifference to the rights of Carmouche, thereby entitling Carmouche to an award of punitive damages.

## DEMAND FOR RELIEF

WHEREFORE, Kirk Carmouche demands from Defendants the following:

(a) Issue a permanent injunction:

    (i) Requiring Holzer to abolish discrimination, harassment, and retaliation;

    (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

  (iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

  (iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

  (v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Holzer to restore Carmouche to one of the positions to which Carmouche was entitled by virtue of Carmouche's application and qualifications, and expunge Carmouche's personnel file of all negative documentation;

(c) An award against each Defendant of compensatory and monetary damages to compensate Carmouche for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Carmouche claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (614) 556-4811
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com

*Attorney For Plaintiff Kirk Carmouche*

# JURY DEMAND

Plaintiff Kirk Carmouche demands a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)